**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 13 |
| | ) | Case No. 15-13801-MSH |
| SCOTT R. LESCINSKAS | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

**MEMORANDUM AND ORDER**
**ON DEBTOR'S OBJECTION TO EAST BOSTON SAVINGS BANK'S NOTICE**
**OF POSTPETITION MORTGAGE FEES, EXPENSES, AND CHARGES**

Chapter 13 of the Bankruptcy Code[1] offers a debtor who falls behind on his home mortgage payments a golden opportunity. He can stop his lender from enforcing its contractual and state law rights to foreclose on his home by presenting a plan that amortizes all the payment arrearages over an extended period. In a perfect world, whatever crisis or setback propelled the debtor into bankruptcy has been overcome by the time the petition is filed, and thus in exchange for chapter 13's golden opportunity, the debtor pays his post-petition obligations in full and on time as the Bankruptcy Code requires.

For many debtors, however, the world is hardly perfect. Chapter 13 cases often travel a bumpy road, first to plan confirmation and beyond that to plan completion, rutted along the way with missed post-petition payments to mortgage lenders and trustees. This leads to repeated motions to dismiss and for relief from the automatic stay followed by frenzied efforts by debtors to save their debt adjustment cases, some successful, many not.

The drafters of the Federal Rules of Bankruptcy Procedure recognized this reality and sought, in one area at least, to discourage post-petition defaults that could jeopardize the

---

[1] All references to the Bankruptcy Code are to 11 U.S.C. §§ 101-1532.

successful completion of chapter 13 cases. In 2011, they adopted Rule 3002.1 which, among other things, imposes requirements on mortgage lenders in chapter 13 cases to regularly notify debtors and the court whenever there is a change in a debtor's monthly mortgage payment or an addition to the payment for fees, expenses or charges incurred by the lender. The purpose of the rule is to facilitate successful chapter 13 debt adjustments by promoting transparent and timely notice, thus avoiding situations where unpaid amounts accumulate to the point where, by the time a debtor is made aware of them, they are beyond his ability to pay.

This chapter 13 case typifies the vicissitudes confronting a debtor who is unable to consistently maintain post-petition payments and illustrates what happens when a mortgage lender neglects to comply with Rule 3002.1.

Mr. Lescinskas, the debtor, filed his chapter 13 petition in this court on September 30, 2015, to save his home in Braintree, which at the time was subject to over $70,000 in overdue payments on two mortgages held by East Boston Savings Bank and on municipal charges owed to the city. During the five years this case has been pending, Mr. Lescinskas has been bombarded with five motions by the chapter 13 trustee to dismiss this case for failure to make required payments under his chapter 13 plan and four motions by the bank for relief from the automatic stay for failure to make post-petition mortgage payments. He has managed in each instance to avert disaster by curing the payment delinquency that gave rise to the motion, often benefiting from the trustee's or bank's indulgence in agreeing to extend various deadlines.

The latest crisis confronting Mr. Lescinskas was triggered by a Notice of Postpetition Mortgage Fees, Expenses, and Charges ("Notice of Charges") filed by the bank and served on March 11, 2020, informing Mr. Lescinskas that he owed the bank $11,278 in attorneys' fees and

$664.46 in late charges in connection with his first mortgage.[2] Mr. Lescinskas has objected to the bank's Notice of Charges as violating Rule 3002.1(c). This rule requires a bank holding a mortgage on a debtor's primary residence to notify the debtor of all fees and charges within 180 days of incurring them. *See* Fed. R. Bankr. P. 3002.1(c); *see also* Fed. R. Bankr. P. 9009(a) (requiring use of official forms, which include Official Form 410S2—the Notice of Charges form). Mr. Lescinskas points out that the bank's Notice of Charges includes not just fees and charges for the 180 days from September 13, 2019, to March 11, 2020, but also for the years' long pendency of this chapter 13 case. Mr. Lescinskas requests that I "allow" the bank's Notice of Charges only for the charges incurred by the bank on and after September 13, 2019. Needless to say, the bank strenuously opposes Mr. Lescinskas's request.

I held a hearing on Mr. Lescinskas's objection and asked the parties to submit further briefing on the matter as well as statements of agreed and disputed facts and ordered the bank to file a detailed accounting of its late charges and legal fees paid to date by Mr. Lescinskas. Pursuant to my authority under the court's local rules and standing orders, I also ordered the bank's attorney to file a fee application with respect to the legal fees included in the Notice of Charges. *See* MLBR Appendix 1, Rule 13-13(c), as amended by Standing Order 2017-05.

I have received and reviewed all the parties' submissions and have also reviewed the relevant matters of record in this case of which I may take judicial notice. Based on that review, I summarize the sequence of events which will underlie my disposition of the parties' dispute.

In a stipulation dated July 7, 2016 (ECF No. 85-1), resolving the bank's first motion for stay relief (ECF No. 57), Mr. Lescinskas agreed to pay the bank $4930.87 in post-petition

---

[2] This was the second Notice of Charges filed by the bank in this case. As will be discussed below, a prior Notice not germane to the present dispute was filed on March 9, 2018.

3

payment arrearages "inclusive of late fees and attorney fees." On November 23, 2016, the bank

filed its second motion for stay relief (ECF No. 100), alleging that Mr. Lescinskas had failed to

comply with the July stipulation and that he was also in arrears on subsequent mortgage

payments. In its second stay relief motion the bank did not identify any unpaid legal or late fees.[3]

In the affidavit of a bank vice president accompanying the motion, the bank asserted that Mr.

Lescinskas was in arrears in the total amount of $9490.88. The affidavit did not indicate whether

any portion of this sum was attributable to fees or charges. After a hearing, I granted the bank's

motion by order dated December 15, 2016 (ECF Nos. 110, 111). The next day, Mr. Lescinskas

moved to vacate my order. In his motion (ECF No. 112), Mr. Lescinskas stated that "[t]oday, the

Debtor delivered a bank check to his attorney's office in the amount of $12,500.00 made out to

[the bank]" and that his attorney had mailed the check to the bank. The bank neither opposed the

motion to vacate nor denied receiving the money, and so on January 4, 2017, I vacated my prior

order granting the bank stay relief.

    As the $12,500 paid by Mr. Lescinskas was considerably more than the $9490.88

arrearage claimed by the bank in its November 2016 stay relief motion, the reasonable

assumption is that the difference was applied by the bank to Mr. Lescinskas's December

mortgage payments and to outstanding attorneys' fees and late charges. The accuracy of this

assumption is validated by a series of subsequent court filings by the bank. In a Notice of

Charges filed by the bank on March 9, 2018, nearly sixteen months after Mr. Lescinskas made

the $12,500 payment, the bank identified post-petition attorneys' fees of $90, late fees of

---

[3] The motion failed to include the real estate worksheet (MLBR Official Local Form 13)
required by MLBR Appendix 1, Rule 13-16-1(d), which contains a series of line items that must
be completed, including the amounts of any post-petition attorneys' fees, late charges, and other
fees and charges.

$777.65 and appraisal fees of $525. In its third motion for relief from stay (ECF No. 146) filed

on May 21, 2018, the accompanying worksheet lists late charges of $885.08 but no post-petition

attorneys' fees or appraisal fees.[4]  In a stipulation dated July 17, 2018 (ECF No. 158), the parties

resolved the bank's third stay relief motion by agreeing on a payment schedule for Mr.

Lescinskas to become current on his overdue payments and outstanding fees by August 20, 2018,

while maintaining his regular monthly payments. The stipulated amount of outstanding fees was

$956.44. This amount correlates almost exactly with the $885.08 in late charges set forth in the

bank's stay relief motion plus additional late fees of $71.36 for the two months between the

motion and the stipulation.[5]

      The stipulation contained the familiar proviso that in the event of a default and after

notice and a reasonable opportunity to cure, the bank would file with the court an affidavit of

non-compliance entitling it to stay relief. No such affidavit was ever filed, and thus it is

reasonable to assume that Mr. Lescinskas complied with the stipulation, meaning that as of

August 2018, he was current on his mortgage payments and owed no legal fees or other charges.

      For the next year-and-a-half all remained quiet on the case docket as between Mr.

---

[4] The stay relief motion and accompanying real estate worksheet covered both Mr. Lescinskas's first and second mortgages held by the bank. In the worksheet, tables for each mortgage's post-petition payments alleged to be in default showed no late fees being charged. A separate paragraph in the worksheet, however, stated $885.08 as the amount of post-petition late fees, without specifying the mortgage to which such late fees applied.

[5] According to the post-petition late fee history included with the bank's March 11, 2020 Notice of Charges, the late charges for June and July 2018 totaled $71.62. This late fee history is associated only with Mr. Lescinskas's first mortgage, as it was filed in connection with the bank's proof of claim as to that mortgage.

Lescinskas and the bank.[6] Then on March 11, 2020, the bank filed its fourth stay relief motion
(ECF No. 174), alleging that Mr. Lescinskas had once again fallen behind on mortgage
payments, specifically for the months of December 2019 through March 2020. The worksheet
accompanying the motion listed outstanding post-petition legal fees of $11,419.25 plus $350 for
preparing the motion, late charges of $664.46 and, making a reappearance after having been
listed as zero in the bank's prior stay relief worksheet, appraisal fees of $525.[7]

The bank also filed on March 11, 2020, the Notice of Charges that is the subject of the
parties' dispute. It lists late charges of $664.46, identical to those in the bank's stay relief
worksheet, but lists a different amount for attorneys' fees, $11,278. As for the elusive appraisal
fees, the Notice omits any such fees.

The requirement to file Notices of Charges is found in Rule 3002.1(c) which states:

> The holder of the claim shall file and serve on the debtor, debtor's counsel, and the
> trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in
> connection with the claim after the bankruptcy case was filed, and (2) that the
> holder asserts are recoverable against the debtor or against the debtor's principal
> residence. The notice shall be served within 180 days after the date on which the
> fees, expenses, or charges are incurred.

The Advisory Committee notes on the rule state:

> In order to be able to fulfill the obligations of § 1322(b)(5), a debtor and the trustee
> must be informed of the exact amount needed to cure any prepetition arrearage, *see*
> Rule 3001(c)(2), and the amount of the postpetition payment obligations. If the
> latter amount changes over time, due to the adjustment of the interest rate, escrow
> account adjustments, or the assessment of fees, expenses, or other charges, notice

---

[6] During this hiatus, the bank did file two Notices of Mortgage Payment Change, with effective
dates of December 1, 2018, and December 1, 2019, reflecting mortgage payment adjustments
triggered by interest rate changes. These notices are required by Rule 3002.1(b) and are not to be
confused with the Notices of Charges required by Rule 3002.1(c), which are the subject of this
memorandum.

[7] The real estate worksheets accompanying the bank's third and fourth stay relief motions were
signed under penalty of perjury by the same bank vice president who provided the affidavit that
accompanied the bank's second stay relief motion.

of any change in payment amount needs to be conveyed to the debtor and trustee. *Timely notice of these changes will permit the debtor or trustee to challenge the validity of any such charges, if necessary, and to adjust postpetition mortgage payments to cover any properly claimed adjustment.* Compliance with the notice provision of the rule should also eliminate any concern on the part of the holder of the claim that informing a debtor of a change in postpetition payment obligations might violate the automatic stay.

Fed. R. Bankr. P. 3002.1 advisory committee's note to 2011 adoption (emphasis added).

In case the importance of complying with Rule 3002.1(c) is for some reason lost on a lender, Rule 3002.1(i) serves as a sobering reminder. It authorizes the court to punish the offending lender by precluding the lender from using the omitted information as evidence or by "award[ing] other appropriate relief, including reasonable expenses and attorney's fees," or both.[8] Fed. R. Bankr P. 3002.1(i); *see also* Fed. R. Bankr. P. 3002.1 advisory committee's note to 2011 adoption (describing subdivision (i) penalties as "sanctions").

There can be no disagreement that the purpose of Rule 3002.1(c) and (i) is to prevent precisely what has happened in this case—a debtor finding out his mortgage lender is holding him responsible for years of accumulated legal fees and other charges amounting to thousands of dollars. In this case, Mr. Lescinskas effectively asks me to invoke Rule 3002.1(i)(2) and award appropriate relief by limiting the bank's right to collect from him fees and charges incurred only during the 180 days prior to the date of the Notice of Charges, precluding the bank from collecting anything incurred prior to that time.

---

[8] The gravity of Rule 3002.1 compliance was recently underscored by a series of multimillion dollar penalties negotiated by the Department of Justice's U.S. Trustee Program with certain national banks which the USTP had accused of, among other things, repeatedly violating Rule 3002.1. *See* Press Release, U.S. Trustee Program Reaches Agreements with Three Mortgage Servicers Providing More than $74 Million in Remediation to Homeowners in Bankruptcy (Dec. 7, 2020), U.S. Dep't of Justice, https://www.justice.gov/opa/pr/us-trustee-program-reaches-agreements-three-mortgage-servicers-providing-more-74-million (announcing and providing link to agreements with three mortgage servicers).

The bank offers a plethora of reasons why I cannot or should not do so: 1) Mr. Lescinskas is contractually obligated to pay the bank's fees and charges; 2) Mr. Lescinskas should have known the bank was incurring fees and charges throughout his case and been prepared to deal with them; 3) the fees and charges are reasonable and relieving Mr. Lescinskas of any of them would amount to a windfall in his favor; 4) Mr. Lescinskas's chapter 13 plan has not yet been completed so there is still time for him to amend his plan to provide for catch-up payments; 5) disallowance of fees and charges is not a remedy available under Rule 3002.1(i); 6) Rule 3002.1(c) is not a strict liability rule because Rule 3002.1(i) permits the court to excuse a violation upon a showing of substantial justification or lack of harm; and 7) Rule 9006(b) permits the bank to seek an extension of the 180-day deadline upon a showing of excusable neglect.

The bank's kitchen-sink defenses fall roughly into two categories—contract- and rules-based and equity-based. Turning first to the contract- and rules-based defenses, I find they are unavailing. The bank complains that Mr. Lescinskas is contractually obligated to pay its fees and costs. That may be true as a general matter but one of the hallmarks of our bankruptcy system is a debtor's ability to impair a third party's contractual rights. And even outside the world of bankruptcy, a party's contractual rights may be subject to involuntary alteration when a court determines that the party has engaged in improper or actionable conduct. That is the very nature of a sanction and that is what is being considered here.

The bank's assertion that substantial justification is a defense to a Rule 3002.1(c) violation reflects a too-narrow reading of Rule 3002.1(i). That defense applies to a sanction

under Rule 3002.1(i)(1), not 3002.1(i)(2) which is the section applicable here.[9] Besides, based

on the bank's conduct during this chapter 13 case, including creating the impression that as of

the summer of 2018 Mr. Lescinskas was up to date with his payments, I would not find the

bank's violation to have been justifiable or harmless in any event. Furthermore, the bank has

failed to marshal any legal authority for its claim that disallowance of fees and charges is not an

available remedy under Rule 3002.1(i)(2), nor have I identified any. The decision cited by the

bank in support of its position—*In re Reynolds*, 470 B.R. 138 (Bankr. D. Colo. 2012)—actually

disproves it.

     *Reynolds* is not a Rule 3002.1 case. It deals with the disallowance of proofs of claim

under Bankruptcy Code § 502 and Rule 3001 and is, therefore, distinguishable from this case.

Nevertheless, *Reynolds* interprets a provision in Rule 3001(c)(2)(D) that is identical to Rule

3002.1(i), and in that sense proves helpful. It turns out that in 2011, when Rule 3002.1 was

adopted, including its sanctions provision in subdivision (i), identical language was added as

subdivision (c)(2)(D) to Rule 3001, imposing sanctions for violating that rule's requirement that

certain supporting information be included with proofs of claim. *See* Fed. R. Bankr. P. 3001

advisory committee's note to 2011 amendment. In *Reynolds*, the court had to decide whether a

violation of Rule 3001 by a group of creditors who had failed to include certain information with

their proofs of claim, could be punished by disallowing the claims. For a variety of reasons the

court ruled it could not. One of those reasons was that the sanction provision in Rule

3001(c)(2)(D) (identical to Rule 3002.1(i)) was not broad enough to cover claims disallowance.

Here is what the court had to say:

---

[9] That is, Rule 3002.1(i)(1) provides for a sanction "unless the court determines that the [claim holder's] failure [to provide required information] was substantially justified or is harmless," but Rule 3002.1(i)(2) does not contain such an exception to the sanction set forth there.

> Neither Rule 3001(c)(2)(D)(i) nor (ii) include disallowance of the claim as a permissible remedy. However, Rule 3001(c)(2)(D)(ii) does introduce a note of ambiguity when it allows a court the discretion to ''award other appropriate relief . . . .'' Under customary rules of construction ''other appropriate relief'' is construed to allow a remedy of the same character as the specifically enumerated example of ''reasonable expenses and attorney's fees caused by the failure.'' *Dept. of Labor v. Perini North River Associates*, 459 U.S. 297, 327 (1983) (''[O]ne of the oldest and most respected rules of statutory construction teaches us that general terms should be construed in the light of the specific examples that are expressly identified as included therein.''). Claim disallowance falls far outside the ambit of any permissible interpretation of the scope of a court's discretion under Rule 3001(c)(2)(D)(ii).

*In re Reynolds*, 470 B.R. at 144 (citations omitted). While the disallowance of a proof of claim is not a "remedy of the same character" as the specifically enumerated awarding of "reasonable expenses and attorney's fees," the disallowance of an offending party's own claim for attorneys' fees and other charges is a remedy of precisely the same character. The *Reynolds* decision supports Mr. Lescinskas's request that I apply Rule 3002.1(i) to limit the bank's fees and charges to those incurred during the 180-day period prior to the date of the Notice of Charges.

Finally, the fact that Mr. Lescinskas has not yet reached the end of his five-year plan term so he can still seek to amend his plan to roll overdue bank payments into the plan, has no bearing on the consequences of the bank's failure to file and serve timely Notices of Charges under Rule 3002.1(c). As indicated previously, the purpose of the rule is to avoid having a trustee and debtor reach the culmination of a plan only to discover that post-petition fees and charges are owed. Contrary to the bank's suggestion, putting a debtor in the difficult position of having to seek to amend his plan to amortize post-petition fees and charges (something a debtor cannot even force a lender to accept) is not an acceptable alternative to the lender's complying with Rule 3002.1(c) in the first instance.

Like its contract- and rules-based defenses, the bank's basket of equitable defenses fails to offer a safe harbor from the consequences of its failure to comply with Rule 3002.1(c). Its

claim that Mr. Lescinskas should have known the bank was incurring significant fees and charges is debunked by the record in this case. The filings through the summer of 2018 establish that at that time Mr. Lescinskas had caught up on overdue payments, fees and charges. After that there was no significant activity by the bank in this case until March 2020 with the filing of the fourth motion for relief from stay and the Notice of Charges. Under these circumstances, no reasonable person could have anticipated an $11,000 legal fee.

As for the bank's cost-benefit argument—that the harm to it in being deprived of some of its fees and charges outweighs the benefit (windfall) to Mr. Lescinskas—that argument misses the point. A legitimate purpose of a sanction is to punish. It is not uncommon for the beneficiary of that punishment to be the opposing party who thereby receives a windfall.

Finally, the bank heaves its Hail Mary defense that under Rule 9006(b)(1) it may raise a claim of excusable neglect to escape the consequences of its non-compliance with Rule 3002.1(c). With certain exceptions and limitations, Rule 9006(b)(1) provides:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(1); *see also* Fed. R. Bankr. P. 9006(b)(2)-(3) (providing exceptions and limitations to enlarging time under Rule 9006(b)(1)).

To be clear, the bank's reliance on Rule 9006(b) in this case is purely hypothetical. It argues that because Rule 3002.1 is not one of the rules expressly excluded from the operation of 9006(b)(1), the bank could have sought an extension of time to file its Notice of Charges based on a showing of excusable neglect. It even attaches as an exhibit to its memorandum of law an exemplar of a motion for enlargement of time.

That Rule 3002.1 is not one of the rules whose time deadline is prohibited from extension

under Rule 9006(b)(1) is a useful piece of information. But as long as it remains purely

informational it cannot afford the bank any practical relief. The bank has never requested an

extension.

Assuming for the sake of discussion that I were to treat the bank's memorandum of law

with its model motion for enlargement as an actual request to file its Notice of Charges late, I

would not, under the circumstances of this case, grant such a request. The time period under Rule

3002.1(c) that the bank would need to extend is the requirement to file and serve a Notice of

Charges within 180 days after the fees, expenses or charges were incurred. The late charges

which the bank wants to recover from Mr. Lescinskas go back to October 2015 and run

continuously each month through February 2020. The attorneys' fees begin with a bill by the

bank's lawyers dated November 30, 2015, followed by monthly bills for most months between

that time and January 2020. The upshot of this is that if the bank had complied with Rule

3002.1(c), it would have filed and served a Notice of Charges roughly every six months between

March 2016 and March 2020—a total of nine.[10] It filed two.

The bank missed at least seven deadlines under Rule 3002.1(c) and would have needed as

many enlargements under Rule 9006(b)(1). A track record of neglect such as that cannot qualify

as excusable. Furthermore, the facts in this case would not support a finding of excusable neglect

---

[10]  Attached to the bank's March 11, 2020 Notice of Charges is a two-page accounting listing a
late charge for every month from October 2015 to February 2020. At the end of the accounting,
it states that the "fees assessed" and "total late fees due" are $664.46. The manual addition of all
the late charges listed, however, brings the total to $1888.47. This differs slightly from the late
charge accounting included in the fee application filed by the bank's attorneys which indicates
that the late charges total $1852.66, with $664.46 still owed after $1188.20 in payments by Mr.
Lescinskas. It is not at all clear which late charges were paid, when they were paid, or how, if at
all, the payments would affect the bank's obligation to file Notices of Charges over the nearly
four-and-a-half-year period in question. Suffice it to say that regardless of the bank's omitting
these details, the record is clear that the bank should have filed many more Notices of Charges
than it did (likely one every 180 days) or requested extensions of time to do so.

by the bank even were the bank to be seeking but a single extension of 180 days for its March 2020 Notice of Changes. Over the five years this case has been pending, the bank has filed numerous motions and entered into stipulations purporting to identify outstanding fees and charges owed by Mr. Lescinskas. As previously noted, these filings create an entirely different understanding of what Mr. Lescinskas owed the bank by way of fees and charges during the pendency of this case, including that by the summer of 2018 he was up to date. Having led Mr. Lescinskas and the court in one direction, the bank cannot now seek a do-over that would reverse directions.

To end where I began, in a perfect world Mr. Lescinskas would not have fallen behind on his post-petition obligations nor would the bank have failed to file and serve timely Notices of Charges informing Mr. Lescinskas of the accrual of fees and charges. As a consequence of his failures, Mr. Lescinskas has faced repeated motions to dismiss and for relief from the automatic stay. For the bank's failures, it must face the imposition of appropriate relief under Rule 3002.1(i)(2). I find that in the circumstances of this case, appropriate relief is to limit the bank's rights to collect attorneys' fees and other charges from Mr. Lescinskas to those incurred during the 180 days from September 13, 2019, to March 11, 2020, the date of filing and serving of its Notice of Charges. Based on the records and affidavits submitted by the bank, its attorneys' fees for that period total $1179.25 and late charges total $228.09. All other charges are disallowed. Mr. Lescinskas's objection to the Notice of Charges is sustained accordingly.

It is SO ORDERED.

Dated: February 17, 2021

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge